UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANDREA R.,

      **Plaintiff,**

                                Case No. 3:20-cv-12472
v.                                  Magistrate Judge Norah McCann King

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**[1]

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Andrea R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On May 3, 2017, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since August 30, 2016. R. 106,

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

143, 212–27. The applications were denied initially and upon reconsideration. R. 145–50, 154–59. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 161–63. Administrative Law Judge ("ALJ") Paul Armstrong held a hearing on July 15, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 50–75. In a decision dated July 19, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 30, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 35–44. That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on July 27, 2020. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 18, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[2] On March 19, 2021, the case was reassigned to the undersigned. ECF No. 11. The matter is now ripe for disposition.

**II.    LEGAL STANDARD**

    **A.    Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

---

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 28 years old on her alleged disability onset date. R. 42. Plaintiff met the insured status requirements of the Social Security Act through September 30, 2017. R. 37. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 30, 2016, her alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff's syncope, asthma, obesity, and affective and/or anxiety disorder were severe impairments. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 38–39.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various non-exertional limitations. R. 39–43. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a dietary aide. R. 42–43.

In the alternative, at step five, the ALJ found that a significant number of jobs–*i.e.*, approximately 1,100,000 jobs as a janitor; approximately 349,000 jobs as an assembler; approximately 41,000 jobs as a packer/packager–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 43. The ALJ therefore

concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 30, 2016, her alleged disability onset date, through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at steps four and five and claims a denial of her rights under the Due Process Clause of the Fifth Amendment to the United States Constitution during the administrative process when she was proceeding without the assistance of counsel.[3] She asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 16. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 15.

### IV.  SUMMARY OF RELEVANT MEDICAL EVIDENCE

Jose Acuna,[4] a state agency reviewing medical consultant, conducted an initial review of Plaintiff's medical record on June 27, 2017, R. 84–86, 98–100, and opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds and could sit and stand and/or walk about 6 hours in an 8-hour workday. R. 84, 99. He also opined that Plaintiff could frequently climb ramps/stairs, stoop, kneel, crouch, crawl; could occasionally

---

[3] Thomas G. Gennis, Esq., acted as counsel for Plaintiff from May 2017 to January 25, 2018, when he withdrew as Plaintiff's counsel. R. 144, 183. Plaintiff's current counsel was appointed on August 22, 2019. R. 16–17.

[4] Jose Acuna's credentials do not appear in the record. R. 84–86, 98–100. The Court also notes that Plaintiff mistakenly confuses the names of the state agency reviewing medical consultants, Jose Acuna and Nancy Simpkins, with the state agency reviewing psychological consultants, Nicholas Rios, Psy.D., and George W. Stern, Ph.D. *See Plaintiff's Memorandum of Law*, ECF No. 14, pp. 24–25; *Plaintiff's Reply Brief*, ECF No. 16, pp. 7–8.

8

balance but could never climb ladders, ropes, or scaffolds. R. 84–85, 99. Plaintiff should avoid concentrated exposure to humidity and extreme heat and should avoid even moderate exposure to hazards (machinery, heights, etc.). R. 85, 100. Jose Acuna explained his opinions as follows:

> 29 yo alleges a h/o bipolar d/o. On ADLs the claimant alleges a h/o asthma and having an implanted cardiac monitor (Reveal LINQ implanted 3/6/17); alleges can walk ½ mile before needing to rest for 5 min. d/t SOB, no other physical problems noted. Has not been observed at a FO. The current medical evidence does not demonstrate a sig. limiting h /o asthma (appears controlled, uses MDIs prn). On RC the claimant indicates her cardiac monitor was implanted at JSMC in Neptune and she goes to Shore Heart Group, she stated that she had fainted and her doctor wanted to monitor her, but that she does not take any medication for her heart only for her anxiety. 1/11/17 exercise stress test, Bruce protocol; baseline EKG NSR; exercised to 3rd stage of Bruce achieving 85% of pred. max. HR, EKG response wnl, no chest discomfort, stopped ct /t achieving target HR and fatigue; Imp.: nl. maximal exercise stress test w/avg. exercise capacity. Has a h/o palpitations but the record does not demonstrate a sig. h/o arrhythmias. *2/22/17, h/o syncope, CP, dyspnea and palpitations which occur at rest and exertion; had syncopal episode on 7/2016, reports multiple episodes of near-syncope*; BP 102/54, BMI 31.7, in NAD, cor wnl w/RRR & nl. S1/S2 w/o gallop or murmur, good pulses, rest of exam unremarkable w/no focal neuro def.; EKG shows a SR. On current ROS denied SOB, wheezing, or cardiovascular problems. 5/4/17, BP 114/76, BMI 31.6, HR 84, RR 20, WD/WN, in NAD, exam fully unremarkable w/o pulm or CV abnl. *Given the evidence, and considering the h/o multiple episodes of near-syncope of unclear etiology, the claimant can stand, walk, and sit throughout a normal workday given routine breaks, but should be provided with a 20/10 1/c limitation to minimize valsalvas, no unprotected heights, occ. balancing, limited heat, humidity, and physical hazards.*

R. 85–86, 100 (emphasis added). Nancy Simpkins,[5] another state agency reviewing medical consultant, reviewed Plaintiff's medical record upon reconsideration on November 9, 2017, and agreed with Jose Acuna's RFC. R. 118–20, 135–37.

## V.   DISCUSSION

Plaintiff raises a number of challenges, including, *inter alia*, her claim that the ALJ's RFC determination is not supported by substantial evidence. *Plaintiff's Memorandum of Law*,

---

[5] Nancy Simpkins' credentials do not appear in the record.

9

ECF No. 14, pp. 17–25; *Plaintiff's Reply Brief*, ECF No. 16, pp. 6–8. Plaintiff specifically argues, *inter alia*, that the ALJ erred in evaluating the opinions of the state agency reviewing medical consultants and by failing to incorporate exertional and non-exertional limitations caused by her severe impairments of syncope, asthma, and obesity. *Id*. This Court agrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, an ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to the following limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but the claimant can perform simple, unskilled (SVP 1 or 2) work, with no public contact work, and no more than occasional contact with supervisors and coemployees. The claimant can have no work at unprotected heights, around

>dangerous moving machinery, open flames, and bodies of water. The claimant can have no concentrated exposure to noxious fumes, odors, or respiratory irritants.

R. 39.

In making this determination, the ALJ considered the opinions of Jose Acuna and Nancy Simpkins, the state agency reviewing medical consultants. R. 41–42. State agency consultants are experts in Social Security disability programs. SSR 96-6p. "An ALJ may not ignore these opinions and must explain the weight given to them." *Neal v. Comm'r of Soc. Sec.*, 57 F. App'x 976, 979 (3d Cir. 2003). An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the state agency report and the ALJ's decision and where additional medical evidence is later submitted. *Chandler,* 667 F.3d at 361 ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available.").

The ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06;

11

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[6] the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(1), 416.920c(c)(1). As to the

---

[6] As previously noted, Plaintiff's claims were filed on May 3, 2017.

consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Furthermore, the regulation requires an ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and to articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). "Specifically, the ALJ must explain how [he] considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to— explain how [he] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In the case presently before the Court, the ALJ considered the opinions of the state agency reviewing medical consultants, Jose Acuna and Nancy Simpkins, as follows:

> The state medical consultants found the claimant could perform light work with limited postural activities, and an avoidance of heat, humidity, and hazards (Exhibit 1A, Exhibit 5A). The light work findings are not supported since cardiac testing in the record was unremarkable (Exhibit 2F/13). The other findings account for the history of asthma testified to during the hearing (hearing testimony).

R. 41–42. Plaintiff challenges the ALJ's conclusion that these experts' limitation to light work was "not supported[,]" arguing that the ALJ did not explain that finding. *Plaintiff's Memorandum of Law*, ECF No. 14, p. 24; *Plaintiff's Reply Brief*, ECF No. 16, pp. 7–8. This Court agrees. Although the ALJ referred to "unremarkable" cardiac testing in January 2017, R. 378 (Exhibit 2F/13), as a basis for discounting these consultants' opinions, the ALJ also

13

recognized that Plaintiff was hospitalized for chest pain the following month, had a cardiac monitor inserted in March 2017, and was hospitalized again with nonspecific chest pain in August 2018. R. 40. The ALJ's rejection of this opinion evidence as "not supported since cardiac testing in the record was unremarkable," R. 41–42, without also acknowledging the other relevant medical evidence, is simply insufficient. At a minimum, the Court cannot meaningfully review the ALJ's finding in this regard. *See Jones,* 364 F.3d at 505 (stating that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"); *Cotter*, 642 F.2d at 704–05 (explaining that the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review").

In addition, it is unclear what the ALJ meant when he stated that "[t]he other findings account for the history of asthma testified to during the hearing[.]" R. 42. The state agency medical consultants referred to postural limitations—such as never climbing ladders, ropes, scaffolds; occasionally balancing—as well as environmental limitations—such as avoiding concentrated exposure to humidity and extreme heat— but the ALJ did not include those limitations in the RFC. In any event, it is unclear how such unidentified findings "account for" Plaintiff's asthma or otherwise undermine the supportability or consistency of these consultants' opinions. *See id.*; *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (requiring the ALJ to articulate his "consideration of medical opinions" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions"); *Michelle K.*, 2021 WL 1044262, at *4 ("[T]he ALJ must explain how [he] considered the 'supportability' and 'consistency' factors for a medical source's opinion.") (citations omitted). It is also unclear to what extent the ALJ's error in evaluating the opinions of state agency reviewing medical consultants infected the ALJ's RFC

determination. R. 39–43. Thus, the Court cannot meaningfully review the ALJ's RFC finding, nor can the Court determine whether substantial evidence supports the ALJ's finding at step four of the sequential evaluation process. *See Murphy v. Comm'r of Soc. Sec*., No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis.").

The Commissioner argues that the ALJ "specifically explained that he did not find these [state agency medical opinions] to be credible because they were not consistent with the record as [a] whole." *Defendant's Brief Pursuant to Civil Rule 9.1*, ECF No. 15, p. 24. The Commissioner further argues that, in any event, any error on the part of the ALJ was harmless because the vocational expert testified regarding "a simple, *sedentary* job that Plaintiff can perform[.]" *Id*. (emphasis in the original). The Commissioner's arguments are not well taken. The Court is not persuaded that the vocational expert's identification of an unskilled sedentary job–*i.e.,* packer/packager–renders harmless the ALJ's flawed consideration of the state agency medical consultants' opinions. As discussed earlier, the ALJ did not include in the RFC certain postural and environmental limitations recommended by these consultants and the ALJ did not include these limitations in the hypothetical posed to the vocational expert. R. 39, 71–72, 84–85, 99–100, 118–20, 135–37. Significantly, the ALJ did not include a limitation on balancing in his RFC, despite the state agency consultants' recommendation that Plaintiff be limited to only occasional balancing. A limitation in balancing may significantly erode the occupational base for sedentary work. *See* SSR 96-9p ("However, *if an individual is limited in balancing even when*

15

*standing or walking on level terrain*, there may be a significant erosion of the unskilled sedentary occupational base. It is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base.") (emphasis added); *Thomas v. Colvin*, No. CV 15-3288, 2016 WL 676372, at *5–6 (D.N.J. Feb. 18, 2016) (remanding action where the ALJ "does not address the requirement to explain the balance limitations. On remand, the ALJ should address Plaintiff's balance limitations consistent with the SSR and/or obtain vocational expert testimony") (citing SSR 96-9p); *Gonzales v. Colvin*, 191 F. Supp. 3d 401, 420 (M.D. Pa. 2015) (remanding action where the ALJ never acknowledged a physician's opinion that the claimant could perform light work and that the claimant "was limited to only occasionally balancing, stooping, kneeling, crouching, and crawling. . . . The ALJ did not include these limitations in his RFC. This could be significant because 'if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base.' SSR 96–9p. Thus, the ALJ rejected relevant limitations without explanation, which requires remand."). Because the ALJ expressly relied on the vocational expert's testimony in response to hypothetical questions that did not contain all the postural and environmental limitations identified by the state agency medical consultants and did not adequately explain why he discounted such limitations, R. 42–43, the Court cannot conclude that this error was harmless or that substantial evidence supports the ALJ's decision. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) ("[A] vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of

determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations); *Sawyer v. Berryhill*, 305 F. Supp. 3d 664, 671 (E.D. Pa. 2018) ("The Court is not a vocational expert and is thus not in a position to impute reasons why the ALJ did not include this limitation in his hypothetical or whether his failure to do so is harmless in this case. Absent further vocational expert testimony with an appropriate limitation (or explanation), the Court cannot speculate as to the outcome.").

For all these reasons, the Court therefore concludes that remand of the matter for further consideration is warranted. This is true, moreover, even if, upon further examination of these issues, the ALJ discounts the opinions of the state agency reviewing medical consultants, Jose Acuna and Nancy Simpkins, and ultimately concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must

be remanded to the Commissioner for further consideration of these issues.[7]

## VI.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  February 11, 2022                     *s/Norah McCann King*
                                              NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE

---

[7] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the opinions of the state agency reviewing medical consultants and the RFC, the Court does not consider those claims.